UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

LEIGH ANN MARZANO,
    *Plaintiff*,

v.

SOUTHERN NEW ENGLAND
TELEPHONE COMPANY, d/b/a FRONTIER
COMMUNICATIONS OF CONNECTICUT,
    *Defendant*.

No. 3:16-cv-1274 (JAM)

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Leigh Ann Marzano has filed this action against defendant Southern New England Telephone Company (SNET) alleging that she was unlawfully paid less than men who held the same job that she did as a construction supervisor. SNET now moves for summary judgment. I will grant the motion as to Marzano's gender discrimination claims but deny it as to her claim for a violation of the Equal Pay Act.

**BACKGROUND**

The following facts are set forth in the light most favorable to Marzano as the non-moving party. Marzano began working for SNET in 1988 as a general office associate. Marzano did not have a technical background, and over the next two decades she held a variety of administrative jobs for SNET. In 2008, she became a Project Manager at SNET. This new role involved working on a battery project and included duties such as ordering batteries, scheduling replacements of batteries, and supervising the work of technicians related to the battery project.

Marzano was promoted in 2009 to the position of Construction Supervisor within the Digital Electronics Group of SNET's Construction and Engineering Organization. She continued to serve in that position through November 2016 and the filing of this lawsuit.

1

Marzano was promoted to the Construction Supervisor position by her manager, Michael Imbriglio, who first approached her directly about the position and told her that there would be no salary increase if she accepted the new position. Promotion to a management position ordinarily entailed a 10% salary increase, but Marzano was told that this was not possible because of budget concerns.

Marzano was one of several Construction Supervisors, all of whom were men except for one woman who left SNET in 2014. Marzano had the same job responsibilities as her peers, and she received strong performance reviews.

As a Construction Supervisor, Marzano supervised between 10 and 18 technicians at any given time. The job description for the Construction Supervisor position stated a preference for a technical degree, as well as three to five years of network-related technical experience, which Marzano did not have. Although the parties dispute the extent to which Marzano had any prior technical job experience, they do not dispute that all of Marzano's peers at the Construction Supervisor position had at least as much technical experience as she did.

SNET had union and non-union employees, and the Construction Supervisor position was not a union bargaining unit position. Coming into the new position, Marzano's salary was not as high as it might have been had she been previously employed as a bargaining unit employee. By contrast, all but one of Marzano's peers at the Construction Supervisor position were promoted to this position from more well-paying bargaining unit positions at SNET, and their starting salaries as Construction Supervisors took into account the level of their prior salary.

When Marzano started as a Construction Supervisor in 2009, she was the lowest paid among her all-male peers. Her salary then was $52,607, compared to a range of between $76,361 and $82,344 that was paid to her four male peers.

Over the years from 2009 to 2016, Marzano received numerous salary increases. Her base salary increased 60% during that term, more than any other Construction Supervisor. In 2016, her salary was $84,301, which was still lower than all but one of her five male peers serving as Construction Supervisors. Four of her all-male peers earned between $84,897 and $98,479 in 2016.

During the years that Marzano worked as a Construction Supervisor, there was only one other female Construction Supervisor. This female peer worked from 2010 to 2014, and she was paid a higher salary than Marzano, ranging from between $83,124 and $88,955. This female peer's salary was not only higher than Marzano's but higher than most of their male peers who worked as Construction Supervisors.

Marzano complained about her salary as early as 2009 or 2010. Marzano was told by Imbriglio that it was a "dead-end situation" and that she would need to be rated far ahead of her peers to justify a higher salary. Marzano was not told that her salary was less than her peers because of her prior non-bargaining unit position or because of her prior lack of technical or other educational experience.

Marzano filed this lawsuit in July 2016. Count One of the complaint alleges a claim for gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Count Two alleges a claim for gender discrimination in violation of the Connecticut Fair Employment Practices Act (CFEPA), Conn. Gen. Stat. § 46a-60(a)(1). Count Three alleges a claim under the Equal Pay Act, 29 U.S.C. § 206. Although the complaint alleges that Marzano was subject to numerous forms of discrimination, Marzano's summary judgment briefing addresses only the disparity in her pay, and therefore this ruling addresses only the pay disparity issue.

3

**DISCUSSION**

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

*Counts One and Two – Gender Discrimination under Title VII and CFEPA*

Both Title VII and CFEPA prohibit gender-based discriminatory action by employers, and they involve the same basic legal standards. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 556 (2d Cir. 2010). As an initial matter, although Marzano alleges that she was subject to pay discrimination since 2009 when she began as a Construction Supervisor, she does not contest in her summary judgment briefing that the statute of limitations bars any liability for discriminatory acts that occurred prior to January 16, 2015—300 days prior to her filing of an administrative complaint with the Connecticut Commission on Human Rights and Opportunities (CHRO). Of course, evidence of prior events may be considered for background purposes to the extent that they may shed light on the significance of events occurring within the statute of limitations period. *See, e.g.*, *Davidson v. LaGrange Fire Dist.*, 523 F. App'x 838, 839 (2d Cir. 2013).

Claims arising under both Title VII and CFEPA are analyzed under the familiar *McDonnell-Douglas* three-part burden shifting standard. *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 225 (2d Cir. 2014); *Craine v. Trinity Coll.*, 259 Conn. 625, 637 (2002). First, Marzano must show facts to establish a *prima facie* case: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that the circumstances of the adverse action give rise to an inference of discrimination. *See, e.g.*, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 83 (2d Cir. 2015). A plaintiff's burden to state *a prima facie* case is "not onerous" and has been frequently described as "minimal." *Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 75 (2d Cir. 2016). Here, I conclude that at least a genuine fact issue exists for Marzano's *prima facie* case, in view that she was a member of a protected class by reason of her gender, that she was qualified for her position, that she suffered an adverse action in terms of lower salary, and that the disparity between her salary and the salary of her male peers is enough for initial purposes to raise a *prima facie* inference of discrimination.

Next, if a plaintiff carries her minimal burden to make out a *prima facie* case, then the burden shifts to the defendant to articulate a legitimate, non-discriminatory basis for termination. *Id.* at 75. SNET has done so here. SNET asserts that the salary disparity was due to differences between Marzano and her male peers in terms of prior technical experience, skills, and education; prior salaries (as determined by union membership); and prior salary negotiation history. Doc. #39 at 25.

Lastly, the burden shifts back to the Marzano to prove that SNET's justification was in fact a pretext for discrimination. *See Vega*, 801 F.3d at 83. In showing pretext, a plaintiff must show not merely that the employer's proffered non-discriminatory reason is untrue or incomplete

5

but also that discrimination was at least a substantial motivating factor for the employer's adverse action. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 156–57 (2d Cir. 2010). "[T]he plaintiff's admissible evidence must show circumstances that would be sufficient to permit a rational finder of fact to infer that the defendant's employment decision was more likely than not based in whole or in part on discrimination." *Walsh*, 828 F.3d at 75.

In my view, no rational fact finder could conclude on this record that the reason for the disparity in Marzano's pay was motivated in whole or part due to her female gender. Marzano has not adduced any evidence of sexism or any gender-based hostility in her workplace environment. It was a male supervisor who offered her the Construction Supervisor job without Marzano's even applying for the position. Marzano subsequently received multiple salary increases, more than any of her male peers. And particularly damaging to her claim of any gender-based discriminatory animus is the fact that there was another female Construction Supervisor who was paid substantially more than Marzano and more than a majority of her male peers. A rational jury could not conclude that the disparity in Marzano's pay from January 16, 2015, to the filing of this lawsuit was in whole or in part because SNET harbored discriminatory animus against Marzano on the basis of her gender. Accordingly, I will dismiss Counts One and Two of the complaint.

### *Count Three – Equal Pay Act*

Congress passed the Equal Pay Act "to legislate out of existence a long-held, but outmoded societal view that a man should be paid more than a woman for the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999). An employer violates the Equal Pay Act if it pays wages to an employee "at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires

equal skill, effort, and responsibility, and which are performed under similar working conditions . . . ." 29 U.S.C. § 206(d).

Thus, in order to prove a violation of the Equal Pay Act, a plaintiff must demonstrate (1) that the employer pays different wages to employees of the opposite sex; (2) that the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) that the jobs are performed under similar working conditions. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014).

In notable contrast to a claim for gender discrimination under Title VII or CFEPA, a plaintiff seeking relief under the Equal Pay Act need not show that the employer intended to discriminate because of gender. *See Belfi*, 191 F.3d at 135–36. Instead, once a plaintiff makes out a *prima facie* case as to each of the three elements outlined above, the statute affords the employer four specific affirmative defenses, and the burden of persuasion shifts to the employer to prove that the disparity is justified by one of these defenses. *Ibid.*

These four defenses allow for an employer to have a gender pay disparity if it is due to "'(i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.'" *Id.* at 136 (quoting 29 U.S.C. § 206(d)(1)). If an employer intends to rely on the last of these four defenses (that the pay differential was due to a factor "other than sex"), then the employer "must also demonstrate that it had a legitimate business reason for implementing the gender-neutral factor that brought about the wage differential." *Ibid.*

A plaintiff in turn "may counter the employer's affirmative defense by producing evidence that the reasons the defendant seeks to advance are actually a pretext for sex discrimination." *Ibid.* "The appropriate inquiry to determine if the factor put forward is a pretext,

7

is whether the employer has used the factor reasonably in light of the employer's stated purpose as well as its other practices." *Ibid.* (internal quotations, brackets, and citations omitted); *see also Ryduchowski v. Port Auth. of N.Y. & N.J.*, 203 F.3d 135, 142 (2d Cir. 2000) (summarizing legal framework governing consideration of a claim under the Equal Pay Act).

SNET here does not contest for present purposes that Marzano has made out a *prima facie* case for a violation of the Equal Pay Act. SNET, in turn, relies only on the last of the four affirmative defenses (that the pay differential was due to a factor "other than sex"), and it claims—as noted above—that the pay differential is explained by differences between Marzano and her male peers in terms of prior technical experience, skills, and education; prior salaries (as determined by union membership); and prior salary negotiation history. Doc. #39 at 25.

In my view, a genuine fact issue remains about this defense. As Marzano notes, none of these reasons were previously told to Marzano when she raised complaints about her pay. Different reasons were given instead. So there is some doubt whether any of these reasons actually explain why SNET paid Marzano less than her male peers. Nor is it indisputably clear that all these reasons are legitimate ones that were used reasonably not only to initially justify but also to continue to justify with each passing year a differential in pay. *See Osborn v. Home Depot U.S.A., Inc.*, 518 F. Supp. 2d 377, 386–87 (D. Conn. 2007) (denying summary judgment because of genuine fact issues regarding reasonable use of proffered business reasons for paying plaintiff less on an initial and continuing basis).

Any claim under the Equal Pay Act must be brought within two years of its accrual or three years if the violation is willful. *See Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997) (citing 29 U.S.C. § 255(a)). A defendant's violation of the Equal Pay Act is willful if the employer either knew or showed reckless disregard about whether its conduct was

prohibited by the statute. *Id.* at 119. In order to show such willfulness, a plaintiff need not show that an employer acted with intent to discriminate or in bad faith. *Ibid.* In view of Marzano's contemporaneous complaints about her pay and the evident fact that she was one of only two Construction Supervisors who were women, a genuine fact issue remains about whether any violation of the Equal Pay Act was willful (even absent any discriminatory animus).

## CONCLUSION

For the reasons set forth above, SNET's motion for summary judgment is GRANTED as to Count One (Title VII gender discrimination) and Count Two (CFEPA gender discrimination) but DENIED as to Count Three (Equal Pay Act).

It is so ordered.

Dated at New Haven this 10th day of September 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge